CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 25 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

JOHN DONOHUE,            )    CASE NO. 7:13CV00397
                           )
       **Plaintiff,**       )
                           )    **MEMORANDUM OPINION**
**v.**                       )
                           )
**LT. J.D. LAMBERT, ET AL.,**   )    **By: Glen E. Conrad**
                           )    **Chief United States District Judge**
       **Defendant(s).**   )

John Donohue, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that, after he covered his window and flooded his cell on June 6, 2013, the defendant prison officials at Red Onion State Prison used excessive force against him in violation of the Eighth Amendment, when they pepper sprayed him, cuffed him too tightly, beat him with their fists in his cell and in the shower, and confined him in five-point restraints for thirteen hours. In addition, Donohue sues one officer for placing him on strip cell status on May 11 and 20, 2013. The parties have filed motions for summary judgment, which the court finds ripe for disposition. Donohue has also filed separate motions to amend to add defendants and allegations to his original claims,[1] as well as new claims against new defendants.[2] The court will allow these amendments.

---

[1] In the original complaint, Donohue names these defendants: Lt. J.D. Lambert, Lt. Blevins, Lt. McCowan, Lt. P. Payne, Lt. C.C. Gilbert, Warden Mathena, Sgt. C. Deel, Officer S.T. White, Officer Beverly, Officer McCurdy, Unit Manager W. Swiney, Lt. S.B. Franklin, Officer Adams, Officer Rose, and Officer Mullins. In his first motion to amend, Donohue seeks to add the following individuals as defendants to the excessive force claims: Major Gallihar, K. Brinkley, T. Carroll (in place of defendant Beverly), Sgt. D. Barton, M. Younce, and J. Diets.

[2] Donohue names the following present or former prison officials as defendants in the amended claims: at Red Onion—L. Mullins, M. Counts, Vitatoe, Powers, L. R. Collins, S. L. Day, R. D. Gibson, D. A. Still, Quillen, Johnson, Walker, Ingle, T. McCoy, T. Raiford, and John Doe; at Nottoway—V. Gray, P. White, E. Rodriguez, D. Saunders, Harris Diggs, Cauchrin, E. Miller, and several John Does; and Regional Director G. K. Washington.

For reasons herein stated, the court finds material facts in dispute as to Donohue's claims that some defendants used excessive force or failed to intervene to prevent such force on June 6 and 7, 2013. The court concludes, however, that the defendants are entitled to summary judgment as to Donohue's claims concerning the OC pepper spray and strip cell status, and as to his claims against certain defendants. Therefore, the defendants' motion for summary judgment will be granted in part and denied in part, and the matter will be set for a jury trial. In light of the material factual disputes and renewed, clarified discovery requests, Donohue's motions for summary judgment will be denied without prejudice.[3] The new due process and retaliation claims against new defendants, however, must be summarily dismissed as without merit, pursuant to 28 U.S.C. § 1915A(b)(1).

## I. Donohue's Allegations in the Complaint

On May 11, 2013, after officers told Donohue that he would not receive recreation and a shower and refused to call the sergeant to talk to Donohue, he started to cover his cell door window. The sergeant then came, removed Donohue and his property from the cell without any resistance, and returned Donohue to the cell on modified strip cell status, while his property remained on a table in the pod for seven hours. When Donohue got his property back, four expensive law books were missing.

On May 20, 2013, and several times before that day, Officer Quillen allegedly provided Donohue with an empty meal tray. Donohue claims that from receiving an insufficient amount of food, he has lost 40 pounds since he came to Red Onion.[4] Not knowing what else to do to get

---

[3] Discovery disputes before the magistrate judge have been ongoing in this case. The court has reviewed Donohue's most recent motions in that regard and has considered his continuing disputes over discovery in the light most favorable to him in determining the appropriate resolution of the summary judgment motions.

[4] Donohue presents evidence that he reported his weight loss to the medical unit, but the doctor found no medical need to order extra portions or supplements for him.

2

fed, Donohue stopped up his toilet, causing a flood in his cell and the surrounding pod area. Officers removed him from his cell, dragged his property through the water on the floor, and brought a disciplinary charge against him for intentional flooding. The conviction and the penalty of restricted privileges on that charge were upheld, despite Donohue's complaints of not being fed.

On June 6, 2013, during recreation period, Inmate C. Smith passed Donohue a copy of a settlement order in a 1981 prisoner civil rights case. When Officer Rose came to the recreation area to return Donohue to his cell, Rose confiscated the document as contraband. Donohue states that he intended to use this document to challenge the legality of a recently implemented system of graduated privileges for Red Onion inmates. When Donohue insisted that he needed the document for his litigation efforts, Rose threatened to beat him for protesting Red Onion policies. To protest the confiscation, Donohue covered his window and flooded his cell. Officers came to the cell, ordered him to uncover his window, and when he did not comply, sprayed him three times with OC pepper spray. An extraction team entered Donohue's cell and, after a struggle, restrained him and escorted him to the shower for decontamination.

Donohue alleges that during the restraint process, Officer White applied one handcuff so tightly that it caused nerve damage to his left wrist.[5] Donohue also alleges that after he was fully restrained inside his cell, White and Carroll struck him in the face numerous times, causing his right eye to swell and bleed.[6] White allegedly said, "[T]his is . . . for all the grievances you have been filing, and you better back off if you know what's f------ good for you." (Compl. 9.)

---

[5] Donohue alleges that he continues to have pain in his wrist and now wears a brace.

[6] In the complaint, Donohue alleges that White and Beverly assaulted him inside the cell. After the defendants submitted evidence on summary judgment that Carroll, not Beverly, participated in the cell extraction on June 6, 2013, Donohue moved to amend to delete the claims against Beverly and add Carroll as a defendant in his place. The court will grant this amendment.

3

Donohue also alleges that while he was in the shower, White and Carroll continuously slammed his head into the shower wall and kneed him in the ribs several times before pushing his head under the water and placing a spit mask on his head to hide the cuts, bruises, and lacerations they had caused. Donohue alleges that Gilbert, Franklin, Swiney, Mullins, Rose, McCurdy, Payne, Deel, and Lambert "idly stood by and watched" and failed to intervene as White and Carroll assaulted Donohue in the shower for four minutes. (Id.)

Officers then placed Donohue in five-point restraints without resistance, where he remained for several hours. He claims that he was not offered a bathroom break for seven hours, during which time he urinated on himself. When Officer McCowan did release him from the five-points at midnight and placed him in ambulatory restraints to use the restroom and eat, Donohue was not resistant. Nevertheless, officers returned him to five-point restraints for several more hours. After these incidents, officers brought three disciplinary charges against Donohue: tampering with security equipment, intentionally flooding an area, and disobeying an order. Donohue was found guilty on each charge and penalized with a fine.

Donohue also claims that on June 10, 2013, two officers threatened to "make him bleed worse than in the shower" if he filed paperwork about the June 6, 2013 strap-down and beatings. He asserts that Red Onion Warden Mathena knows of and condones such violence and abuse of policy.

## II. The Parties' Motions for Summary Judgment

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of showing the absence of a

4

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (omitting quotation).[7]

## A. Defendants' evidence

The defendants offer the following undisputed evidence in support of their motion for summary judgment. On June 6, 2013, Defendant Deel saw that Donohue and the inmate in the next cell had covered their windows. Offenders are not permitted to cover their cell windows for any reason, because it prevents staff from seeing into the cell. Donohue refused to respond or uncover his window. In addition, Deel saw water flowing out from under Donohue's cell door. Both inmates refused to uncover their windows after the officers gave repeated orders for them to do so. Officer Deel called Defendant Payne, who repeatedly ordered Donohue to uncover his window. When Donohue refused to comply, the officers obtained approval from the medical

---

[7] The parties' motions for summary judgment are directed at Donohue's original claims that the defendants used excessive force against him in various respects. The court will address separately Donohue's recent amendments to these claims, which primarily involve some changes to the defendants he intends to sue.

Case 7:13-cv-00397-GEC-PMS   Document 88   Filed 09/25/14   Page 5 of 25   Pageid#: 818

department to use OC pepper spray and electronics on these two offenders.[8] Payne again ordered the inmates to uncover their windows, and they failed to comply. Payne notified Major Gallihar of the incident and obtained his approval to use a cell entry team to remove Donohue and the other inmate from their cells if necessary.[9]

Payne then ordered Donohue to back up to the cell door to be restrained, but Donohue failed to do so. Payne then administered a one-half to one second burst of OC pepper spray into the cell, and then gave Donohue another order to back up to the cell door to be restrained. Again, Donohue failed to comply. Payne sprayed a second burst of OC pepper spray into the cell and ordered him to back up to be restrained. Donohue still did not comply. Payne shot a third short burst of the pepper spray into the cell and gave a final order for Donohue to comply with restraint procedures, but he failed to do so. Payne then ordered a cell entry team to enter the cell, restrain Donohue, and extract him from his cell, as Gallihar had authorized.

The extraction team consisted of Officers White, McCurdy, Rose, Mullins, and Carroll. When the cell door opened, White and McCurdy entered first, carrying electronic shields. After some struggle, the team placed handcuffs and shackles on Donohue,[10] and White, Mullins, and McCurdy escorted him the shower for decontamination from the OC pepper spray. Rose stayed in the pod area to help extract another inmate.

---

[8] Donohue disputes the defendants' evidence that the officers had medical approval to use OC spray on him, stating that medical would not have approved use of OC spray on the other inmate who covered his window, because he is asthmatic. The court finds no material dispute here, as Donohue offers no evidence that medical failed to approve OC spray for use on Donohue.

[9] Warden Mathena was not present during the cell entry and was not involved in the decision to place Donohue in five-point restraints.

[10] Details about this struggle are sharply disputed. Donohue alleges that White applied one hand cuff so tightly that it injured him, denies that anyone used an electronic shield against him, and contends that White and Carroll then beat him in the face after he was restrained. Defendant White denies committing any of these acts, stating that he activated the shield against Donohue and then applied shackles to Donohue's ankles. All the officers deny seeing anyone beating Donohue.

6

Donohue was in the shower for four minutes.[11] After decontamination, Donohue was escorted to the medical unit. Nurse Cox assessed Donohue's condition, noting a blackened right eye, laceration to his head and foot, scrapes on his back, head, foot, and chest, and red areas on his shoulder and chest. The nurse cleaned these areas with sterile water and told Donohue to follow up with medical as needed.

At approximately 5:52 p.m., Blevins, Lambert, and Barton placed Donohue in five-point restraints in medical cell #1 without incident, as authorized by Gallihar,[12] in order to control his disruptive behavior. Officers' notes from regular checks of Donohue's behavior state that he continued to be disruptive while in restraints, yelling that he would get out and kill all the officers or make them pay. Based on reports that Donohue continued to make comments like these throughout the night and show aggression and anger toward staff, even after they gave him an incident-free break in ambulatory restraints at midnight, officers reapplied the five-point restraints. Medical staff also checked on Donohue several times during the night, but noted no voiced complaints.

Supervisory officials must decide when an inmate's behavior has improved and when to release him from five-point restraints; correctional officers may not make these decisions. At approximately 6:50 am on June 7, 2013, Lt. Day and Lt. Fleming released Donohue from five-point restraints. Donohue complained that his left hand hurt. The nurse checked him and noted no redness, bruising or deformities. A doctor examined Donohue's hand on June 10, 2013, after Donohue complained of pain and numbness. The doctor noted that the hand had good strength

---

[11] The officers deny that anyone slammed Donohue's head into a wall or kneed him in the ribs during decontamination, as Donohue alleges, and state that he continued to be verbally disruptive and made threats to harm staff.

[12] The defendants' evidence is that Donohue continued to make verbal threats after being extracted from his cell, but Donohue states that video not yet in the record will show that his conduct did not warrant the use of five-point restraints.

7

and normal appearance with numb areas diagnosed as neuropaxia/acute nerve trauma which would likely resolve with time.

## B. Discussion

Donohue's primary contention is that the defendants used excessive force against him in several ways on June 6 and 7, 2013, in violation of the Eighth Amendment to the United States Constitution, which prohibits "cruel and unusual punishments." U.S. Const., Amend. VIII. The Eighth Amendment does not prohibit all applications of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). The court conducts an objective inquiry—whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry—whether a specific prison official "acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (omitting internal quotations).

The objective component focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. While the court must afford deference to prison

8

administrators' "discretion" regarding necessary measures to maintain security, that discretion "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322. If "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," and it presents a factual issue as to whether the force was nontrivial, the case must go to trial. Id.

Donohue contends that any use of force was excessive, because if the officers had returned the confiscated court document, he would not have misbehaved. He blames officials for "goating" him into breaking prison rules and asserts that standing in his cell in his flipflops, he did not pose any threat necessitating force. These arguments fail utterly. Donohue's possession of the court document on the recreation yard violated prison policy, as did covering his window, flooding his cell, and ignoring numerous orders to uncover the window and comply with cuffing procedures. His frustration over losing the document as he did is no excuse for his choice to blatantly disregard prison rules and tamper with state property. His own defiant and recalcitrant actions posed a serious security threat and created a need for official action to regain control over him and restore order and discipline. Clearly, prison officials cannot allow an inmate to use violations of prison rules as a means to have what he wants. Thus, Donohue's noncompliant actions, not the officers' refusal to return the document, necessitated the use of force to restore order and ensure the security of staff and inmates, including Donohue. The court will separately address the types of force the officers utilized.

**1. Use of pepper spray on June 6, 2013**

It is well established that prison officials violate the Eighth Amendment when they use pepper spray against an inmate in "quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (omitting citations). On the

9

other hand, many courts have upheld as constitutional the use of pepper spray to regain control over a recalcitrant inmate after other measures have failed to do so. See, e.g., Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) (finding that use of mace or other chemical substances "when reasonably necessary to prevent riots . . . or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment").

Donohue does not allege any adverse effects he suffered from the OC gas the officers sprayed into his cell. Indeed, the effects of the substance did not persuade Donohue to comply with the officers' orders, thus necessitating further use of force to quell his disruptive behavior. Donohue presents no disputed fact on which he could persuade a jury that the use of the spray was a wanton infliction of harm rather than a good faith effort to restore order. Therefore, the court will deny Donohue's motion for summary judgment, and grant the defendants' motion for summary judgment, as to all excessive force claims concerning the use of OC spray against Donohue.

### 2. Physical force during cell extraction and shower

Donohue does not challenge the officers' use of electronic shields or other equipment during the cell extraction process. His evidence is that during this process, although he was not resisting the officers' attempts to restrain him, White handcuffed him too tightly and White and Carroll assaulted him with their fists. Donohue asserts that the cell extraction process has nothing to do with the inmate's head, yet he suffered a black eye and other injuries to his head. He disputes the defendants' evidence that the cuff injury to his wrist resolved in a few weeks. He also asserts that White and Carroll physically assaulted him in the shower for four minutes, causing additional injuries. White and the other officers deny that anyone physically assaulted

10

Donohue and insist that they used only that amount of force necessary to restrain him in his cell and to decontaminate him in the shower.

Finding material facts in dispute on which Donohue might persuade a jury that the alleged physical assaults occurred in the cell and shower, and that these particular acts constituted a wanton infliction of harm rather than a good faith effort to restore order, the court will deny the defendants' motion for summary judgment as to these excessive force claims against White. The court will also grant Donohue's amendment dismissing all claims against Defendant Beverly and adding Officer Carroll as a defendant to the claims originally alleged against Beverly, and will direct the clerk to attempt service of process on Carroll. Given the defendants' evidence disputing the alleged physical assaults, however, the court will deny Donohue's motion for summary judgment as to these claims.

### 3. Use of 5-point restraints on August 10, 2012

The use of four- or five-point restraints in a good faith effort to control prison inmates is not per se unconstitutional. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996); Sadler v. Young, 325 F.Supp.2d 689, 702 (W.D. Va. 2004), rev'd on other grounds, 118 F. App'x 762 (4th Cir. 2005). On the other hand, application or continued use of five-point restraints on an inmate who does not currently pose a threat to security or discipline can be violative of the Eighth Amendment even when that inmate does not suffer significant physical injuries. Sadler, 325 F.Supp.2d at 704; Davis v. Lester, 156 F.Supp.2d 588, 594 (W.D. Va. 2001).

The court finds material disputes as to whether Donohue's behavior after the cell extraction warranted the application of five-point restraints, whether anyone offered him a bathroom break before midnight, whether he laid in his own urine for four to five hours, and whether his behavior during the midnight bathroom break warranted reapplication of the five-

11

point restraints for several more hours. The court finds material facts in dispute on which Donohue might persuade a jury that the application and the continuation of five-point restraints under the circumstances constituted a wanton infliction of harm rather than a good faith effort to restore order. Accordingly, the motions for summary judgment must be denied on these claims as to the ranking officers who requested or assisted in applying or in reapplying the five-point restraints: Lambert, Blevins, and McCowan. The court will grant summary judgment for Adams, however, because it is undisputed that he had no authority to decide whether five-point restraints were appropriately applied to Donohue.

### 4. Bystanders

Donohue asserts that the following defendants were present in the area on June 6, 2013, but failed to intervene when White and Carroll were assaulting Donohue: Lambert, Payne, Gilbert, Rose, Mullins, Deel, McCurdy, Swiney, and Franklin. Donohue also faults Swiney and Franklin for failing to intervene when officers were placing Donohue in five-point restraints, and then when officers were reapplying such restraints, although he was allegedly no longer disruptive.

"[I]f a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." Randall v. Prince George's County, 302 F.3d 188, 203 (4th Cir. 2002). Defendants offer undisputed evidence that Officer Rose did not accompany Donohue to the shower. Therefore, the court finds that summary judgment must be granted for Rose as to the claim that he failed to intervene to prevent or stop the alleged assault in the shower. Material facts remain in dispute, however, as to whether other defendants could have intervened to stop excessive force being used against Donohue on June 6 and 7, 2013. Accordingly, the court will

deny summary judgment on Donohue's bystander claims against the following officers: Lambert, Payne, Gilbert, Rose, Mullins, Deel, McCurdy, Swiney, and Franklin.[13]

### 5. Strip cell status on May 11 and 20, 2013

Donohue asserts that on these dates, Unit Manager Swiney "condon[ed] and encourage[ed] his workers to misuse and override mental health policies by placing [Donohue] on strip cell" for several hours in ambulatory restraints with no personal property.[14] (Compl. 6, ECF No. 1.) The court cannot find that Donohue has any Eighth Amendment claim against Swiney for placing him on strip cell status in ambulatory restraints. This court has repeatedly held that the extended use of ambulatory restraints in a stripped cell which does not result in significant physical injury is a de minimis use of force that does not satisfy the objective component of an Eighth Amendment excessive force claim. Holley v. Johnson, No. 7:08CV00629, 2010 WL 2640328, at *14 (W.D. Va. June 30, 2010) (citing other cases). Donohue admits that he almost covered his window on May 11 and completely covered his window and flooded his cell on May 20. He offers no evidence that he suffered any physical or emotional injury from these strip cell incidents. "In response to [such] admittedly disruptive misconduct, a temporary limitation of [Donohue's] access to hygiene products, bedding, eating utensils, and freedom of movement, which cause[d] no physical injury other than temporary discomfort and embarrassment, simply cannot qualify as a use of force that is "repugnant to the conscience of mankind" so as to constitute cruel and unusual punishment. Id. Therefore, the

---

[13] Disputes of fact that preclude summary judgment on many aspects of Donohue's Eighth Amendment claims also preclude summary judgment on the defendants' asserted defense of qualified immunity. Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995).

[14] Donohue did not describe the May 11 and 20, 2013 incidents in his complaint itself. He did make this bare assertion against Swiney in the complaint and attached affidavits offering his description of these incidents. Therefore, the court liberally construes the strip cell claims as part of his complaint.

13

court will grant the defendants' motion for summary judgment and deny Donohue's motion for summary judgment as to his strip cell claims.[15]

### 6. Warden Mathena

Donohue has not forecast evidence on which he could establish that Warden Mathena had any personal involvement in the events of May 11, May 20, June 6, and June 7, 2013. To hold this supervisory official liable for failing to prevent the alleged excessive force his subordinates used on these dates, Donohue must meet a "heavy burden of proof" to show the warden's "continued inaction in the face of documented widespread abuses" of a similar nature. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). Donohue has made no such showing of past incidents of excessive force. Therefore, the court will grant the defendants' motion for summary judgment, and deny Donohue's motions for summary judgment, as to his claims against Warden Mathena.

## III. Donohue's Amended Claims

### A. Excessive Force and Failure to Intervene

In light of information in the defendants' submissions on summary judgment and discovery, Donohue has amended to add the following defendants to his claims of excessive force and failure to intervene: Major Gallihar (for authorizing five-point restraints on June 6,

---

[15] Donohue also complains that when other inmates covered their windows on May 14, 2013, Swiney did not put those inmates on strip cell status or charge them with any disciplinary infraction, as he did to Donohue. Different treatment of similarly situated inmates, if reasonably related to a legitimate penological purpose, however, does not violate the Constitution. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). Donohue has not stated facts on which he could prove that Swiney had no legitimate reason for treating the other inmates differently than he was treated.

Donohue's allegation that four expensive law books disappeared from his property during his strip cell status also fails to support any claim of constitutional dimension. Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Because Donohue possessed tort remedies under Virginia state law by which to seek recovery of the monetary value of the missing items, see Va. Code Ann. § 8.01-195.3, he cannot prevail in § 1983 claim for the alleged property loss.

14

2013); K. Brinkley (the camcorder operator on June 6, 2013, for failing to film all relevant events and for failing to intervene when others used excessive force); T. Carroll (for punching Donohue during the cell extraction and in the shower, substituted for Beverly, who was sued in the complaint for this conduct); Sgt. D. Burton (for helping to apply the five-point restraints and failing to intervene to prevent their application to an allegedly nondisruptive Donohue); and M. Younce and J. Diets (for unspecified actions). The court will grant these amendments to the complaint.

The court will direct service on Gallihar, Carroll, Brinkley, and Barton, and will dismiss all claims against Defendant Beverly. Because Donohue has not stated any claims against Younce and Diets, however, the court will summarily dismiss the amended complaint as to these defendants without prejudice under 28 U.S.C. § 1915A(b)(1).[16]

## B. Due Process and Retaliation

In his second motion to amend, Donohue adds new claims complaining about numerous disciplinary proceedings where he allegedly did not receive due process. Indeed, he complains that VDOC policies themselves violate due process principles. He also asserts that officials have convicted and penalized him on numerous charges, changed his good time earning rate, transferred him to Red Onion, and limited his privileges, all to harass him because of his criminal charges (related to child pornography) and because he files grievances. As defendants, he names dozens of additional VDOC officials who have allegedly waged this campaign of harassment and retaliation against him since December 2009.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this

---

[16] An inmate's complaint must be summarily dismissed under § 1915A(b)(1) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Case 7:13-cv-00397-GEC-PMS   Document 88   Filed 09/25/14   Page 15 of 25   Pageid#: 828

deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A "frivolous" claim is one that "lacks even an arguable basis in law" or in fact," because it is "based on an indisputably meritless legal theory" or based on "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989) (interpreting "frivolous" in former version of 28 U.S.C. § 1915(d)).

### 1. Due Process Issues

Donohue rests his due process claims on a series of disciplinary actions taken against him. On December 29, 2009, officials at Nottoway Correctional Center brought a disciplinary charge against Donohue for writing letters to another Nottoway inmate and making plans to escape. At the disciplinary hearing, Donohue admitted to writing the letters, but claimed that the text of an earlier letter would prove that he and Inmate X did not make plans to escape. The hearing who officer rejected this argument without first obtaining the earlier letter as Donohue requested; nevertheless, found Donohue guilty of the charge based on the reporting officer's testimony and the seized letters; and imposed a penalty of 30 days in isolation. The charge was reheard in February 2010, due to a recording problem at the first hearing, but the outcome was the same and was upheld on appeal.

Donohue was subsequently transferred to Red Onion, where he served three years without any further disciplinary charges. Then, in April 2012, an officer charged Donohue for allegedly masturbating in the presence of another person. Donohue wanted to call a doctor as a witness at the hearing, purportedly to testify that Donohue's prostate medication prevented him from having an erection or producing semen. The hearing officer denied this witness request, finding that even simulating the charged acts in front of the reporting officer supported a guilty finding.

On May 11, 2013, to protest being denied recreation and a shower, Donohue "started to cover" his window and had words with the floor officers.[17] After these events, he was charged with three disciplinary infractions: disobeying a direct order, tampering with a security device (the window), and threatening bodily harm.[18] The hearing officer found him guilty of all three charges and imposed a fine or a temporary loss of privileges as the penalty for each. Donohue's appeals were unsuccessful.

Then, on May 20, 2013, and several times before that day, Officer Quillen provided Donohue with an empty meal tray. Not knowing what else to do to get fed, Donohue stopped up his toilet, which flooded his cell and the surrounding pod area. Officers removed him from his cell, dragged his property through the water on his cell floor, and brought a disciplinary charge against him for intentional flooding. The conviction and the penalty of restricted privileges on that charge were upheld, despite Donohue's complaints of not being fed.

---

[17] The disciplinary charge indicates that Donohue had covered his windows and failed to comply with several orders to uncover it and comply with restraint requirements so the officers could search his property for contraband.

[18] The disciplinary charge stated that Donohue threatened to come back after his upcoming release to kill officers. Donohue says this charge is false, because his scheduled release is several years away.

Donohue complains that at the disciplinary hearing on his charge for covering his window on June 6, 2013, he told the hearing officer that Inmate Smith, who also covered his window that day, did not receive any disciplinary charges. The hearing officer convicted and penalized Donohue anyway.

On October 27, 2013, Officer Gibson ordered Donohue to put his shoes in the designated box to be searched before recreation. Donohue asked Gibson if he was going to clean the box, Gibson said no, Donohue said he was not going out, and did not put his shoes in the box. Gibson then charged Donohue for failing to obey an order.

On January 9, 2014, Donohue told Officer Owen that the hotdog bun was missing from his lunch tray, and Owen said he would bring one. When Owens later ordered Donohue to hand out his tray, Donohue refused, saying that he was still eating. Owens charged Donohue for disobeying an order, and the hearing officer found him guilty and imposed a fine, despite Donohue's explanation that he had delayed eating while waiting for his hotdog bun.

Based on these events, Donohue asserts that the many newly named defendants have committed procedural and substantive due process violations. He is apparently arguing that officials have treated him arbitrarily and denied him required procedural protections during each of the specified disciplinary proceedings, in transferring him from Nottoway to Red Onion, and in determining his classification among segregation inmates at Red Onion. For various reasons, all of these claims must be summarily dismissed under § 1915A(b)(1).

### a. Time-barred claims

Donohue's challenges to disciplinary proceedings that occurred in 2009-2010 and his subsequent transfer to Red Onion are time-barred under the applicable statute of limitations. A § 1983 claim regarding events in Virginia must be brought within two years from the time when

the injury is known, or the action is barred by Va. Code Ann. § 8.01-243(a), Virginia's statute of limitations for general, personal injury claims. See Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc); Owens v. Okure, 488 U.S. 235, 239-40 (1989). Donohue filed this lawsuit, at the earliest, on August 18, 2013, more than four years after the challenged disciplinary convictions and the 2010 transfer. Therefore, any claims concerning these events are time barred under § 8.01-243(a) and will be summarily dismissed as frivolous.[19] Id. (upholding summarily dismissal of time-barred § 1983 claim as frivolous under prior version of § 1915).

### b. Due process standards

Donohue's vague due process challenges to VDOC disciplinary and classification procedures, in general and as applied to him, must also be summarily dismissed as frivolous. An inmate's federally protected liberty "interests are limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,[20] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). If the status change that an inmate challenges did not impose atypical hardship on him, then he has no federally protected liberty interest, and he is not entitled to federal due process protections before prison officials may implement the change or the disciplinary penalty.

---

[19] In any event, as Donohue knows from the court's previous dismissals of his claims concerning these events, his current claims are frivolous. See Donohue v. Ray, No. 7:11CV00227, 2011 WL 2441294 (W.D. Va., June 13, 2011) (dismissed under § 1915A(b)(1) as frivolous); Donohue v. Diggs, No. 7:11CV00090, 2011 WL 795889 (W.D. Va., March 01, 2011) (same).

[20] Donohue states no facts on which the court could find under Sandin that the defendants' actions violated his substantive due process rights, as he alleges. Only "[C]onduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010). None of the incidents of which Donohue complains approaches a shock to the conscience, in light of his admitted, repeated violations of prison rules and procedures. Likewise, none of the penalties imposed inevitably increased Donohue's term of confinement.

Case 7:13-cv-00397-GEC-PMS   Document 88   Filed 09/25/14   Page 19 of 25   Pageid#: 832

Id. at 486-87. Courts have found that Virginia's classification scheme governing prisoners' custody and security classifications does not create a liberty interest in avoiding changes in these classifications, because they are subject to change, based on inmate behavior and prison officials' discretion. Oliver v. Powell, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp. 933, 943 (W.D. Va. 1996).

Even where an inmate has a federally protected interest at stake in a disciplinary proceeding, the required procedural protections do not equate with those rights he enjoyed during the criminal proceedings. Prison officials must provide (1) advance written notice of the disciplinary charge; (2) a written record of the hearing officer's findings and the evidence relied on in convicting him; (3) a limited opportunity to "call witnesses and present documentary evidence in his defense"; and (4) a fair and impartial tribunal. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). A hearing officer's decision that legitimate penological interests justify the denial of an individual inmate's witness request [is] not to be lightly second-guessed by courts far removed from the demands of prison administration." Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004). A conviction on a disciplinary charge will withstand an evidentiary sufficiency challenge if the hearing officer's findings are supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). Finally, a state's failure to abide by its own procedural regulations is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

### c. VDOC procedures

Donohue's allegations and submissions indicate, quite contrary to his conclusory due process challenges, that the VDOC has crafted and imposed detailed procedural rules in the context of prisoner classification and discipline. He fails to identify any respect in which the

20

VDOC's disciplinary procedures themselves fail to comply with the due process requirements in Wolff and Hill and fails to point to any due process shortcoming in the procedural steps VDOC officials must make before reclassifying an inmate for reasons of security, housing, or good conduct time. Therefore, his challenges to VDOC procedures will be summarily dismissed under Sandin and Wolff.

### d. Confinement and classification status

Similarly, Donohue does not identify any basis for finding that his current segregation status at Red Onion either exceeds the expected restrictions of his prison sentence itself or imposes any unusual hardship on him when compared with other categories of confinement within the VDOC. He does not attempt to explain any respect in which the new graduated privileges scheme at Red Onion implicates any protected liberty interest or poses any atypical hardship on him, and the court finds none. Accordingly, Donohue's due process challenges to his current prison classification and segregation status will be summarily dismissed under Sandin. 515 U.S. at 484.

### e. Disciplinary proceedings

The individual disciplinary proceedings Donohue challenges also fail to present any actionable due process claim under § 1983. His submissions indicate that none of the challenged disciplinary proceedings, individually or collectively, resulted in a penalty that imposed atypical hardship on him as contemplated under Sandin. Id. Therefore, he alleges no facts indicating that he was entitled to federal due process protections under Wolff before being convicted of or penalized for the disciplinary infractions. The defendnats' alleged shortcomings related to state procedural rules do not give rise to any claim of constitutional proportions. Riccio, 907 F.2d at 1469.

Even assuming that one or more of the challenged disciplinary charges involved some federally protected interest that triggered the protections outlined in <u>Wolff</u> and <u>Hill</u>, the record does not reflect any occasion when Donohue did not receive those protections. His submissions indicate that, in each case, he received notice of the charge before the final hearing; he attended or could have attended the hearing to present his case; and he received detailed written reasons for the conviction and for its being upheld on appeal. He has not stated facts showing that any hearing officer was biased against him. In each case, the officer had logical and impartial reasons for denying a witness or rejecting Donohue's proffered documentary evidence or defenses.

Moreover, in each case, "<u>some evidence</u> in the record" supported a finding that Donohue had committed the infraction for which he was convicted—the quantum of evidence required in such proceedings under <u>Hill</u>. 472 U.S. at 454 (emphasis added). If the hearing officer finds the reporting officer's testimony credible, that report is sufficient evidence on which to rest a finding of guilty. Donohue's purported justifications for committing an infraction do not render him innocent of the charge or excuse his violation in any way. Specifically, anger over not getting fed, not receiving recreation or a shower, seeing other inmates not receive a disciplinary charge for the same conduct, not wanting to get his shoes dirty, and not wanting to eat a hot dog without a bun are not viable defenses to charges for disobeying an order, for flooding a cell, or for covering his window. If the inmate commits the offense, regardless of his self-serving reason for doing so, he has no claim that officials act arbitrarily when they charge, convict, and penalize him for that offense. The court will summarily dismiss as frivolous all of Donohue's disciplinary charge due process claims. § 1915A(b)(1).

## 2. Retaliation

Donohue's "campaign" of harassment claim must also be dismissed as frivolous. His bald assertions that every adverse official action taken against him since 2009 was retaliatory lacks any arguable basis in fact. Such conclusory allegations are not sufficient to state an actionable retaliation claim against anyone. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (requiring more than "naked allegations of reprisal" for prima facie retaliation claim under § 1983). Retaliation claims by prisoners against prison officials "must…be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Id. Thus, a retaliation claim requires facts showing that the inmate's exercise of a constitutionally protected right was a "substantial" or "motivating" factor behind the allegedly retaliatory action. Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

Donohue makes no such showing. First, because he has no constitutional right to a grievance procedure in prison, Adams, 40 F.3d at 75, his retaliation claims based on his use of the grievance procedures are frivolous. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Moreover, Donohue fails to state facts connecting any of the challenged disciplinary proceedings in the amended claims to his use of the grievance procedures or the nature of his criminal charge. Indeed, in almost every case, his own allegations indicate that he committed the infraction for which he was convicted, and even where he denies committing the infraction, that he received all the procedural protection to which he was entitled. He simply has not stated facts suggesting that the nature of his criminal charge or his use of the grievance procedure was a

23

substantial, motivating factor in the official decisions he challenges. <u>Wagner</u>, 13 F.3d at 90-91. Because his allegations thus state no actionable retaliation claims against anyone, his "campaign of harassment" claim must be summarily dismissed as to all defendants, pursuant to § 1915A(b)(1) as frivolous.

## IV. Discovery Matters

Donohue has asserted in numerous motions and submissions that he has been unable to prosecute his claims, because the court has refused to require the defendants to provide him with all of the discovery materials he requested. Some of his disputes over discovery, such as his complaint of spoliation of evidence related to events on May 11 and 20, 2013, are now moot, in light of the court's conclusion that underlying claims must be dismissed. Donohue has also more fully explained how some of the disputed video footage he requested is relevant to his excessive force and bystander claims, and the court will allow him access to the available footage. Other demands he has made remain objectionable, however, such as his overly broad and burdensome requests for production of his entire medical record and his entire prison record.

In the interest of efficiency, the court will deny all pending motions regarding discovery disputes, but will direct the defendants to make available to Donohue certain video footage and certain medical records. The court will also allow Donohue to serve additional, closely focused requests for production of documents or video footage, related only to the excessive force and bystander claims that remain at issue.

## V. Conclusion

For the reasons stated, the court will grant the defendants' summary judgment motion in part, and deny it in part, as to certain claims that the defendant officials used excessive force and/or failed to intervene to prevent the use of excessive force. The court will deny Donohue's

Case 7:13-cv-00397-GEC-PMS   Document 88   Filed 09/25/14   Page 24 of 25   Pageid#: 837

motions for summary judgment, but will grant his motions to amend, although his retaliation and due process claims will be summarily dismissed under 28 U.S.C. § 1915A(b)(1) as frivolous. Finally, the court will deny current discovery motions, but will allow limited additional discovery in preparation for trial. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel for the defendants.

ENTER: This _25th_ day of September, 2014.

_____
Chief United States District Judge