# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JOHN DONOHUE,** ) | |
|     Plaintiff ) | Civil Action No.: 7:13cv00397 |
| ) | |
| v. ) | |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **Lt. J. D. LAMBERT, et al.,** ) | |
|     Defendants. ) | |
| ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |

The plaintiff, John Donohue, an inmate incarcerated at Red Onion State Prison, ("Red Onion"), and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging, among other things, that, on June 6 and 7, 2013, the defendant prison officials[1] at Red Onion used excessive force against him and utilized five-point restraints on him for approximately 13 hours, in violation of his Eighth Amendment rights. Donohue seeks compensatory and punitive damages, as well as injunctive and declaratory relief. This case is before the court on the Motion For Summary Judgment On Behalf Of Defendant Rose, (Docket Item No. 284), ("Rose's Motion"), and Defendant Unit Manager Swiney's Motion For Summary Judgment, (Docket Item No. 311), ("Swiney's Motion"), (collectively "Motions"). Donohue claims that defendant Rose failed to prevent two other corrections officers from using excessive force against him during the course of a cell extraction on June 6, 2013. He claims that defendant Swiney, as Unit Manager, condoned and encouraged his workers to misuse and override mental health

---

[1] In his original Complaint, Donohue named numerous defendants. Donohue also has filed two motions to amend, which the court granted, adding additional defendants and new claims.

-1-

policies by allowing him to be placed on strip cell status for several hours in ambulatory restraints with no personal property on May 11 and May 20, 2013, and that he was deliberately indifferent by failing to intervene during the June 6 and June 7, 2013, incident. The plaintiff has responded to the Motions, the defendants have replied, and none of the parties has requested a hearing on the Motions, making them ripe for disposition. The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report, recommending that the Motions be granted.

## I.     Facts

Donohue alleges in his Complaint, and amendments thereto, that, during recreation on June 6, 2013, inmate Corey Smith passed him a copy of a settlement order in a prisoner civil rights case. Thereafter, defendant Rose, a corrections officer, confiscated this document as contraband when he came to the recreation area to return Donohue to his cell. According to Donohue, he intended to use this document to challenge the legality of a recently implemented system of graduated privileges for Red Onion inmates. He alleges that when he insisted he needed the document for his litigation, Rose threatened to beat him for protesting Red Onion policies. To protest the confiscation, Donohue covered his cell door window and flooded his cell. Officers came to his cell, ordered him to uncover his window and, when he did not comply, they sprayed him three times with OC pepper spray. An extraction team, which included defendant Rose, entered Donohue's cell and, after a struggle, restrained him and escorted him to the shower for decontamination. He alleges that after he was fully restrained inside his cell, Officers White and Carroll[2]

---

[2] Donohue initially alleged that Officers White and Beverly assaulted him inside his cell. However, once the defendants submitted evidence on a prior summary judgment motion that

struck him in the face multiple times, causing his right eye to swell and bleed. Donohue alleges that White said "[T]his is … for all the grievances you have been filing, and you better back off if you know what is f------ good for you." (Complaint at 9.) After Donohue was assessed by medical staff, he was placed in five-point restraints by officers, where he remained for several hours. Officers released him periodically and placed him in ambulatory restraints to use the restroom and eat, but then returned him to five-point restraints.

Counsel for Rose also has submitted portions of a transcript of a deposition of Donohue, in which Donohue stated that, when Donohue was being assaulted on his bed by Officers White and Carroll, Rose was located "towards the first part of coming into the cell." (Docket Item No. 285-1, ("Donohue Deposition"), at 18-19.) Donohue claimed that, although he was near the "first part" of coming into the cell, Rose was located inside of his cell, not standing on the outside of the cell door. (Donohue Deposition at 19.) He testified that there were five officers who participated in the cell extraction, and all five officers were in the cell. (Donohue Deposition at 14-15, 19.) Donohue testified that he was struck by Officers White and Carroll a total of four times over a period of approximately 15 seconds. (Donohue Deposition at 26-27.)

## II. Analysis

---

Carroll, not Beverly, participated in the cell extraction, on June 6, 2013, the court allowed Donohue to delete the claims against Beverly and add Carroll as a defendant in his place.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

While an officer generally may be held liable under 42 U.S.C. § 1983 only for affirmative conduct, the Fourth Circuit held in *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203-04 (4th Cir. 2002), that in certain situations, officers may be liable for failing to act. In recognizing the existence of bystander liability, the Fourth Circuit stated that "[a]ny rule to the contrary would permit officers to ignore their duty to enforce the law." *Randall*, 302 F.3d at 204; *see also Willis v. Oakes*, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007). This court has held that, in order for bystander liability to attach, the plaintiff must demonstrate that the officer

(1) knew that another officer was violating the plaintiff's constitutional rights; (2) had a reasonable opportunity to prevent the other officer from committing the violation; and (3) chose not to act. *See Willis*, 493 F. Supp. 2d at 784 (citing *Randall*, 302 F.3d at 204). In *Randall*, the Fourth Circuit cited the Second Circuit case of *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2nd Cir. 1988), in which the court found insufficient evidence to support a verdict against an officer for his failure to intervene because the "three blows were struck in such rapid succession that [the officer] had no realistic opportunity to attempt to prevent them." The *O'Neill* Court observed that "[t]his was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." 839 F.2d at 11-12.

In determining what constitutes a reasonable or realistic opportunity to prevent another officer from committing a violation of a plaintiff's constitutional rights, courts have found that the duration of the alleged misconduct is an important factor to consider. For instance, in *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2nd Cir. 2015), the Second Circuit affirmed summary judgment for bystanders' failure to prevent another officer's "fairly immediate" conduct. Likewise, in *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014), the Seventh Circuit noted that a "realistic opportunity" means "a chance to warn the officer using excessive force to stop." In *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 639-40 (6th Cir. 2013), because the Sixth Circuit found that the events at issue "occurred rapidly" and did not involve "ongoing excessive force," the court affirmed summary judgment for the bystanders. In *Wallin v. Dycus*, 381 F. App'x 819, 823-24 (10th Cir. 2010), because the incident at issue lasted only two minutes, the Tenth Circuit affirmed summary judgment for a bystander. In *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009), the Seventh Circuit affirmed summary judgment

in favor of a bystander, given testimony of the brevity of the alleged incident. In *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007), the Sixth Circuit stated that "courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds 'in a matter of seconds'" (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). In *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994), the Seventh Circuit affirmed summary judgment for a bystander, where "the whole incident happened quickly." In *Gaudreault*, 923 F.2d at 207 n.3, the First Circuit affirmed summary judgment where the plaintiff's allegation was that "the attack came quickly and was over in seconds."

Given this case law, and taking the facts in the light most favorable to Donohue, I find that Donohue has failed to establish the existence of a genuine dispute as to whether defendant Rose had a reasonable opportunity to intervene in the alleged assault by Officers White and Carroll in Donohue's cell. First, by Donohue's own admission, Officer Rose was located near the door to his cell, not near the bed where the assault occurred, with other extraction team members standing between him and Officers White and Carroll. Thus, there is some question as to whether Officer Rose could even see what was occurring during the alleged assault. Additionally, again by Donohue's own admission, the alleged assault by Officers White and Carroll lasted approximately only fifteen seconds, during which time four blows were struck. Thus, even if Rose could see what was happening, given the case law cited herein, I find that fifteen seconds is not a sufficient amount of time to allow him a reasonable or realistic opportunity to intervene. It is for these reasons that I find that Donohue has failed to establish the existence of a genuine dispute as to whether defendant Rose had an opportunity to intervene in the alleged assault by Officers White and Carroll. Thus, I further find

that Donohue cannot establish a bystander liability claim against defendant Rose, and I recommend that the court grant Rose's Motion and enter summary judgment in Rose's favor on this claim.

Defendant Rose also argues that he is entitled to summary judgment based on the defense of qualified immunity. "Qualified immunity is an affirmative defense that shields public officers performing discretionary duties from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lovelace v. Lee*, 472 F.3d 174, 196 (4th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When a government official properly asserts the defense of qualified immunity, he is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[3] For the reasons stated above, I find that Donohue has failed to establish a constitutional violation. Therefore, I find that Rose also is entitled to the defense of qualified immunity, and I recommend that the court grant Rose's Motion and enter summary judgment in his favor on this ground, as well.

---

[3] *Pearson* overruled that part of the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), which mandated that courts conduct the two-step qualified immunity inquiry in sequential order. *See* 555 U.S. at 234-36. Courts now "have the discretion to decide whether that procedure is 'worthwhile'" and "determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242. Otherwise, *Saucier* remains as binding precedent.

Next, Donohue claims that Unit Manager Swiney "condones and encourages his workers to misuse and override mental health policies," and he is suing him in his "individual capacity via deliberate indifferen[ce] for failing to intervene."[4] (Complaint at 6.) However, this court, by Order entered September 25, 2014, previously granted summary judgment in defendant Swiney's favor on Donohue's claims arising from events on May 11 and May 20, 2013. (Docket Item No. 89.) Thus, the only remaining claims against Swiney relate to the alleged misconduct which occurred on June 6 through June 7, 2013.

First, it is well-settled that in order to held liable under § 1983 for actions of subordinate employees, a supervisor must have "direct culpability" in causing a plaintiff's injuries. *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996), *overruled on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). In other words, "liability may be imposed [] only on an official's own conduct." *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *McWilliams*, 72 F.3d at 1197). For the reasons that follow, I find that Donohue has failed to produce evidence that defendant Swiney directly participated in any of the alleged events of June 6 through 7, 2013.

First, defendant Swiney has offered an affidavit in support of his Summary Judgment Motion, stating that he was not physically present on any shift on June 6

---

[4] As counsel noted in his brief, Donohue made these allegations against Swiney as to events occurring on May 11 and May 20, 2013, as well as different alleged events occurring on June 6 through June 7, 2013. However, the court previously dismissed Donohue's allegations pertaining to May 11 and May 20, 2013, and denied any discovery or further proceedings as to those dates. (Docket Item Nos. 88, 89.) Therefore, only the June 6 through June 7, 2013, dates are addressed in this Report and Recommendation.

and June 7, 2013, at Red Onion when Donohue's cell extraction and subsequent restraint occurred. (Docket Item No. 312-1, ("Swiney Affidavit."), at 1.) He stated that he was "on call" as Unit Manager the evening of June 7, 2013, but he was not physically present at Red Onion. (Swiney Affidavit at 1.) According to Swiney, the next time he reported to Red Onion was on June 8, 2013, at 5:00 p.m. as Unit Manager for General Administrative Duty Coverage, a position which monitors the entire facility. (Swiney Affidavit at 1.) Swiney testified that he never had any physical, personal or verbal contact with Donohue on June 6 or June 7, 2013, and he never heard or witnessed any interaction between the other defendant officers or between any officers and Donohue on June 6 or June 7, 2013. (Swiney Affidavit at 1-2.) Swiney also stated that he never condoned or encouraged his officers to do anything to Donohue, including misusing or overriding policies for abuse. (Swiney Affidavit at 2.) Lastly, Swiney testified that he never filed any Incident Report or undertook any administrative actions involving Donohue and any corrections officers for any alleged acts or incidents on June 6 or June 7, 2013, at Red Onion. (Swiney Affidavit at 2.)

Defendant Swiney's affidavit testimony is corroborated by an Incident Report dated June 6, 2013, regarding Donohue's cell extraction, placement on strip cell status and the use of five-point restraints. (Docket Item No. 312-2, ("Incident Report"), at 1.) While seventeen Red Onion staff members are named in the Incident Report as having been involved in the incident, Unit Manager Swiney is not included. (Incident Report at 1.) In the "Description of Incident," contained within the Incident Report, Swiney also is not named. (Incident Report at 2-3.)

Lastly, Swiney's affidavit testimony is corroborated by Donohue's own deposition testimony. Specifically, Donohue admitted that Swiney did "nothing"

-9-

Case 7:13-cv-00397-GEC-PMS   Document 365   Filed 11/16/15   Page 9 of 13   Pageid#: 2255

on the relevant dates of June 6 and June 7, 2013, but acted in a "supervisory role" as "head of the building." (Docket Item No. 312-3, ("Donohue Deposition 2"), at 9.) He testified that he "thought [he] saw [Swiney]" on June 6, 2013. (Donohue Deposition 2 at 10.) However, he admitted that he would not have been able to see Swiney during the cell extraction process because his cell window had been covered. (Donohue Deposition 2 at 11.) Later in his deposition testimony, Donohue admitted that he did not see Swiney do anything, and he stated that he "thought" he saw him that day, but "some people do walk by pretty fast and may look like somebody else." (Donohue Deposition 2 at 12.) Thus, Donohue conceded he could not say with certainty that he saw defendant Swiney on the relevant dates. (Donohue Deposition 2 at 12.) He also testified that, from the time of the cell extraction through the use of the five-point restraints, he could not cite one time when he actually saw defendant Swiney. (Donohue Deposition 2 at 13.) Donohue admitted that, if defendant Swiney had answered his Complaint in a timely manner and produced an affidavit stating that he was not at Red Onion during the time in question, he would have dropped Swiney from the lawsuit. (Donohue Deposition 2 at 14.) Additionally, Red Onion produced existing hand held, as well as rapid eye, video footage of some of the June 6-7, 2013, incident to Donohue, which he viewed on March 13, 2014. Donohue testified at his deposition that he did not see defendant Swiney present anywhere on any of the video footage. (Donohue Deposition 2 at 17.) He further admitted that he had never heard defendant Swiney verbally encourage his corrections officers to use excessive force on inmates, and he conceded he had no proof to support his claim that Swiney condones and encourages such use of excessive force. (Donohue Deposition 2 at 18.)

I find that, even viewing the facts in the light most favorably to Donohue, he has failed to demonstrate the existence of a genuine dispute regarding whether

defendant Swiney directly participated in the events which occurred on June 6 and June 7, 2013. In fact, the evidence before the court demonstrates that defendant Swiney was not present at Red Onion on June 6 through June 7, 2013, and he did not directly participate in the events of which Donohue complains. Therefore, he cannot be held liable under § 1983, and I recommend that the court grant Swiney's Motion and enter summary judgment in his favor on this claim.

Defendant Swiney also argues that he is entitled to the defense of qualified immunity on Donohue's failure to intervene claim. I agree. For the same reasons just stated, I find that Donohue cannot demonstrate the violation of a constitutional right. Thus, I recommend that the court grant Swiney's Motion and enter summary judgment in his favor on Donohue's claim against him based on failure to intervene on this ground, as well.

Donohue argues, for the first time in his response to Swiney's Motion, that Swiney is liable under a theory of supervisory liability. The Fourth Circuit has held in *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009), that a plaintiff may not raise new claims after discovery has begun without amending his complaint. Thereafter, in *Woodson v. City of Richmond, Va.*, 2015 WL 566762, at *3 (E.D. Va. Feb. 10, 2015) (quoting *Harris v. Reston Hosp. Ctr., LLC*, 520 F. App'x 938, 946 (4th Cir. 2013)), the Fourth Circuit upheld a district court's refusal to consider a new legal argument at the summary judgment stage "because … asserting a new legal theory for the first time in opposing summary judgment amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the defendant." Also, in *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 795-96 (E.D. Va. 2007), *aff'd by* 562 F.3d 295 (4th Cir. 2009), the district court similarly held that plaintiff's attempt "well after the close of discovery [in

response to a motion for summary judgment] … to effect a constructive amendment of complaint … would seriously undermine the fairness to the litigation and unfairly prejudice the defendants." Based on this case law, I will not address Donohue's supervisory liability argument, as doing so would constitute a constructive amendment of his Complaint, thereby prejudicing the defendants.

### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. There is no genuine dispute as to defendant Rose's lack of a reasonable opportunity to intervene in the alleged assault by Officers White and Carroll on June 6, 2013;
2. Donohue fails to demonstrate that defendant Rose violated his constitutional rights, thereby entitling Rose to the defense of qualified immunity;
3. Defendant Rose is entitled to summary judgment on Donohue's failure to intervene claim against him;
4. There is no genuine dispute as to defendant Swiney's lack of direct participation in any of the alleged events of June 6 through 7, 2013;
5. Donohue fails to demonstrate that defendant Swiney violated his constitutional rights, thereby entitling Swiney to the defense of qualified immunity; and
6. Defendant Swiney is entitled to summary judgment on Donohue's bystander liability claim against him.

### RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motions and enter summary judgment in favor of defendants Rose and Swiney.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, Chief United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 13th day of November, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE